**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT CHARLOTTESVILLE, VA
FILED
October 16, 2026
LAURA A. AUSTIN, CLERK
BY: /s/ Kayla Lokey
DEPUTY CLERK

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

RICHARD DAVID DEGOUT,

*Defendant.*

CASE NO. 3:94-CR-00008

**OPINION & ORDER**

JUDGE NORMAN K. MOON

Defendant Richard Degout is serving a life sentence following his conviction of four counts arising from a drug conspiracy. Before the Court is Degout's *pro se* Motion for Compassionate Release under the First Step Act. Dkt. 421. For the following reasons, the Court will deny Degout's motion.

## I. BACKGROUND

Degout was a member of a seven-person conspiracy to distribute crack cocaine in Charlottesville, Virginia. *See United States v. Degout*, 2023 WL 3903277, at *1–2 (W.D. Va. June 8, 2023), *aff'd*, 2024 WL 4625075 (4th Cir. Oct. 30, 2024) (citing Dkt. 358 (Presentence Report)). Between 1989 and 1994, Degout and his co-conspirators trafficked at least 3.45 kilograms of crack cocaine, and they regularly carried firearms during their transactions. *Id.*

On November 16, 1992, during one such transaction, Degout shot Anthony Jones—once in the head at point blank range, and again after Jones collapsed to the ground. *See* Dkt. 358 at 5. Degout then threatened to kill an eyewitness (Chavis Saylor) if he told anyone about the murder. *Degout*, 2023 WL 3903277, at *1. Later that evening, Degout showed up at Saylor's apartment, reiterated his threat, and punched him in the face before leaving. *Id.*

On March 9, 1994, a grand jury returned a twelve-count indictment against the conspirators. Dkt. 358 at 4. Degout was named in four counts:

1. Count One: Conspiracy to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A).
2. Count Two: Murder during and in relation to a drug conspiracy under section 841(b)(1)(A), in violation of 21 U.S.C. § 848(e)(1)(A).
3. Count Three: Use of a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c).
4. Count Four: Threatening to kill a witness, in violation of 18 U.S.C. §§ 1512(a)(1)(C) and (a)(2)(B).

*See* Dkt. 1. After pleading not guilty, a jury convicted him of all counts on September 23, 1994. *Degout*, 2023 WL 3903277, at *1.

Degout was sentenced to two life terms for Counts One and Two, with a concurrent sentence of ten years for Count Four and a consecutive five years for Count Three. *Id.* Each sentence was within the then-mandatory sentencing guidelines. *See id.*; Dkt. 358 at 7–11.

Over the years, Degout has made several challenges to both his conviction and sentence, but here the Court considers his first motion for compassionate release. Dkt. 421.

## II. LEGAL STANDARD

As a general rule, district courts lack the power to "modify a term of imprisonment once it has been imposed." *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022). "But Congress has established several narrow exceptions to this rule," which include a motion for compassionate release. *Rutherford v. United States*, 146 S. Ct. 1320, 1326 (2026).

The compassionate release provision allows a district court to "reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable," if it finds that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing

Commission." 18 U.S.C. § 3582(c)(1)(A);[1] *see also id.* § 3553(a)(1)–(7) (sentencing factors). The Supreme Court recently clarified the boundaries of each analytical step. *See Rutherford*, 146 S. Ct. at 1333. Before the district court can move to the § 3553(a) factors, it must first "ensure that a movant is part of the 'limited class of prisoners' who are 'eligible' for such a reduction." *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 825, 827 (2010)). Eligibility depends on whether the movant "can offer 'extraordinary and compelling' reasons that 'warrant' compassionate release." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). "[E]xtraordinary and compelling reasons for compassionate release are those that are especially unusual and convincing," though Congress empowered the U.S. Sentencing Commission to promulgate policy statements to give that term more concrete meaning. *Rutherford*, 146 S. Ct. at 1330; *see* 28 U.S.C. § 994(t). But the district court otherwise "enjoys 'broad discretion to consider all relevant information' unless prohibited by the Constitution or by Congress." *Rutherford*, 146 S. Ct. at 1333 (quoting *Concepcion v. United States*, 597 U.S. 481, 491 (2022)).

The Supreme Court recently clarified an additional point about compassionate release: "its focus [is] on granting mercy rather than righting legal wrongs." *Fernandez v. United States*, 146 S. Ct. 1292, 1303 (2026) (citation omitted). That is, § 3582(c)(1) allows relief based on the movant's "personal circumstances," not the supposed invalidity of their conviction or sentence—such legal challenges must be raised through habeas corpus. *See id.* at 1302–04.

With these principles in mind, the Court turns to Degout's motion.

[1] Administrative exhaustion is also required, which Degout has satisfied. *See* 18 U.S.C. § 3582(c)(1)(A); Dkt. 421 ¶ 10.

## III. DISCUSSION

Degout makes three arguments in support of the existence of extraordinary and compelling reasons to grant his motion, which the Court will address in turn. First, Degout relies on a provision of the Sentencing Commission's policy statement that lists "an unusually long sentence" as an extraordinary and compelling reason. *See* U.S.S.G. § 1B1.13(b)(6); Dkt. 421 ¶¶ 8, 11. Specifically, the policy statement refers to the situation where there is a "gross disparity" between the sentence received and the one the defendant would have received if sentenced today because of a "change in the law." U.S.S.G. § 1B1.13(b)(6).[2] Degout argues that, if sentenced today, he would have received a lesser sentence on Counts One and Two due to the emergence of the *Apprendi* doctrine. *See* Dkt. 421 ¶¶ 12, 15; *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also United States v. Promise*, 255 F.3d 150, 156–57 (4th Cir. 2001) (en banc) (discussing *Apprendi*'s effect on 21 U.S.C. § 841). This argument relies on Degout's contention that the jury failed to find beyond a reasonable doubt that the conspiracy involved more than fifty grams of cocaine. *See* Dkt. 421 ¶¶ 8, 12, 15.

It is important to recall the confines of this argument in this posture. *See Fernandez*, 146 S. Ct. at 1304 ("[The defendant] cannot deploy § 3582 to blunt what he perceives to be the sharp edges of § 2255."). Degout, for his part, acknowledges this point. *See* Dkt. 421 ¶ 15 ("To be clear, Defendant is not challenging the verdict . . . ."). And properly framed, it is clear that the argument cannot meet the "demanding standard" of an extraordinary and compelling reason to grant relief. *Fernandez*, 146 S. Ct. at 1302. Under the policy statement, the mere fact of a sentencing disparity is irrelevant—it is relevant only "after full consideration of the defendant's individualized

---

[2] The provision is also limited to prisoners who have "served at least 10 years of the[ir] term of imprisonment" (*id.*), which applies to Degout.

circumstances." U.S.S.G. § 1B1.13(b)(6). More importantly, after *Fernandez* and *Rutherford*, the validity of § 1B1.13(b)(6) as applied to nonretroactive changes in law is in a state of serious uncertainty. *See Fernandez*, 146 S. Ct. at 1304 n.5 (citing *Rutherford*, 146 S. Ct. at 1334–35); *Cooper v. United States*, 2026 WL 1552007, at *8–9 (S.D. Fla. June 2, 2026).

That leaves Degout's remaining arguments, and they too fail to meet the mark. Degout argues that the "wrongful conduct" of Anthony Jones—the murder victim—was the "but for" cause of his death. Dkt. 421 ¶ 3. Specifically, Degout argues that Jones's "refusal to repay a drug debt" "significantly contribute[d] to the instance offense," and that this constitutes an extraordinary and compelling reason to reduce his sentence. *See id.* ¶¶ 3, 13–14. There is nothing "especially unusual and convincing" about Degout's rationale for murdering Jones that suggests he might be eligible for compassionate release. *Rutherford*, 146 S. Ct. at 1330.

Lastly, Degout points to how he has already served approximately 100 months beyond the national average for a murder sentence. *See* Dkt. 421 ¶¶ 16–17. But Degout was not just convicted of murder—he was convicted of four offenses related to a significant drug conspiracy, one of which involved a murder, and two of which independently justified a life sentence. *See* Dkt. 358 at 11 (Presentence Report).

Because Degout failed to show that he is eligible for compassionate release, the Court is precluded from considering his arguments regarding the § 3553(a) factors. *See Rutherford*, 146 S. Ct. at 1333. And because Degout is ineligible, his motion must be **DENIED**.

It is **SO ORDERED**.

The Clerk of the Court is directed to send a copy of this order to the Defendant and all counsel of record.

Entered this 16th day of October, 2026.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE